993 A.2d 252 (2010)
413 N.J. Super. 107
KITCHENS INTERNATIONAL, INC., Plaintiff-Respondent,
v.
EVANS CABINET CORP., LTD., Defendant-Appellant.
DOCKET NO. A-4289-08T1.
Superior Court of New Jersey, Appellate Division.
Argued March 1, 2010.
Decided April 27, 2010.
*253 Charles K. Reed, Atlanta, GA (McKenna Long & Aldridge) of the Georgia bar, admitted pro hac vice, argued the cause for appellant (Alan F. Kaufman, attorney; Mr. Reed, J. Randolph Evans (McKenna Long & Aldridge) of the Georgia bar, admitted pro hac vice, P. Michael Freed (McKenna Long & Aldridge) of the Georgia bar, admitted pro hac vice, of counsel and on the brief; Mr. Kaufman, on the brief).
Michael R. O'Donnell, Morristown, argued the cause for respondent (Riker Danzig Scherer Hyland & Perretti, L.L.P., attorneys; Mr. O'Donnell, of counsel; Mr. O'Donnell and Jonathan M. Sandler, on the brief).
Before Judges RODRÍGUEZ, REISNER and YANNOTTI.
The opinion of the court was delivered by
YANNOTTI, J.A.D.
Defendant Evans Cabinet Corp., Ltd. (Evans) appeals from an order entered by the Law Division on April 17, 2009, which denied its motion to strike certain judgments filed by plaintiff Kitchens International, Inc. (Kitchens) pursuant to the Uniform Enforcement of Foreign Judgments Act, N.J.S.A. 2A:49A-25 to -33 (UEFJA). We affirm in part, reverse in part, and remand for entry of a stay of enforcement of the disputed judgments upon the posting of appropriate security.

I.
This appeal arises from the following facts. Plaintiff is a Louisiana corporation, which has a satellite office in Montreal, Quebec, Canada. Plaintiff specializes in the sale, distribution and supply of kitchen cabinetry and countertops. Defendant is a Georgia corporation that produces cabinets and other items required in the installation and remodeling of kitchens.
In 2004, the parties entered into a contract in which defendant agreed to manufacture and provide plaintiff with cabinets and other products required for twelve construction projects in the eastern United States. Plaintiff placed the orders for these products from its headquarters in Montreal with defendant's office in Georgia. Defendant manufactured the products and shipped them directly to the construction sites.
Plaintiff has alleged that the products defendant provided were defective and failed to comply with the respective contract requirements. Plaintiff has asserted that, as a consequence of defendant's alleged breaches of the contract, it incurred substantial damages, including but not limited to back-charges, lost profits and out-of-pocket expenditures for repair and replacement of the defective items.
*254 On May 8, 2006, plaintiff brought an action against defendant in the Quebec Superior Court, seeking damages for the losses plaintiff allegedly suffered as a result of defendant's delivery of defective and/or non-conforming products. Defendant was served with process but did not appear, answer or file a responsive pleading. On May 31, 2007, the Quebec court entered a default judgment in favor of plaintiff and against defendant in the amount of $149,354.74 (Canadian).
On April 30, 2007, defendant filed an action against plaintiff in the United States District Court for the District of Massachusetts, in which it asserted claims for breach of contract and quantum meruit. It is undisputed that these claims arose from the same construction projects that were the subject of plaintiff's Canadian lawsuit.
On June 15, 2007, plaintiff filed another complaint against defendant in the Quebec Superior Court seeking additional damages arising from defendant's alleged breaches of the contract. Defendant was served with process but did not appear, answer or file a responsive pleading. On September 17, 2007, the Quebec court entered a default judgment in favor of plaintiff and against defendant in the amount of $486,751.52 (Canadian).
Plaintiff filed a motion to dismiss defendant's federal lawsuit, arguing that the action was barred by res judicata. The federal district court converted the motion to a motion for summary judgment and allowed the parties time to conduct limited discovery on the issue of whether the Quebec court properly exercised personal jurisdiction over defendant. On November 4, 2008, the district court granted plaintiff's motion and dismissed defendant's complaint. Evans Cabinet Corp. v. Kitchen Int'l, Inc., 584 F.Supp.2d 410 (D.Mass. 2008), rev'd, 593 F.3d 135 (1st Cir.2010). In its opinion, the district court stated that:
Pursuant to the [Uniform Foreign Money Judgments Recognition Act,] the Quebec default judgment is enforceable in the same manner as the judgment of a sister state that is entitled to full faith and credit. The Quebec Superior Court properly exercised personal jurisdiction over [defendant], and, therefore, the Quebec default judgment is conclusive. Under the res judicata principle of claim preclusion, the Quebec default judgment precludes the maintenance of this action.
[Id. at 417.]
Plaintiff apparently learned that defendant had a distributor in New Jersey, from whom it could collect its Canadian judgments. Therefore, on February 12, 2009, plaintiff filed the judgments in the Superior Court pursuant to the UEFJA. The judgments were domesticated in New Jersey on March 5 and 6, 2009, respectively.
On March 17, 2009, defendant filed a motion to strike the foreign judgments on various grounds. Defendant argued that the Foreign Country Money-Judgments Recognition Act, N.J.S.A. 2A:49A-16 to -24 (FCMJRA), applied rather than the UEFJA and precluded enforcement of the Canadian judgments because the Quebec Superior Court had improperly exercised personal jurisdiction over it.
Defendant also argued that an appeal was still pending from the decision of the federal district court in Massachusetts and the Law Division should defer to the Massachusetts case as a matter of comity. Finally, defendant argued that plaintiff's motion to strike the judgments was barred by N.J.S.A. 14A:13-11 because plaintiff was not registered to conduct business in New Jersey.
The Law Division considered the matter on April 17, 2009, and placed its decision *255 on the record. The court noted that defendant never sought to vacate or appeal the judgments in the Canadian courts and, therefore, it was obligated to give full faith and credit to the judgments pursuant to the FCMJRA. The court acknowledged that the judgments would not be enforceable in New Jersey if the foreign court did not have personal jurisdiction of defendant. However, the court found that
defendant has not made a showing that a lack of due process occurred that would make [bar this court from giving] the Canadian ... judgment full faith and credit. In its moving papers[,] defendant states that ... the Canadian [c]ourt lacked personal jurisdiction. Given the facts presented before the Court, it is clear that the Canadian court did have personal jurisdiction over the defendant and rendered a valid judgment that is not precluded on the basis of [jurisdiction] ... Moreover, the federal Court in Massachusetts recognized the holding of the Canadian court, even though defendant brought the federal action against the plaintiff.
The court recognized the pending appeal in the Massachusetts case but held that defendant had not established that the outcome of that case would affect the Canadian judgments or preclude the enforcement of those judgments in New Jersey. The court further found that defendant had not established a factual or legal basis to stay the execution of the Canadian judgments. The court entered an order dated April 17, 2009, denying defendant's motion to strike. This appeal followed.
It appears that, in addition to its efforts to enforce the Canadian judgments in New Jersey, plaintiff commenced an action in New York seeking judgment based on the Canadian judgments. On December 21, 2009, the Supreme Court of New York, issued an order granting summary judgment in favor of plaintiff. Kitchens Int'l, Inc. v. Evans Cabinet Corp., Ltd., Docket No. 102466-09 (Sup.Ct., New York County). In an accompanying opinion, the New York court rejected the assertion that the Quebec court did not have personal jurisdiction over defendant. The court found that defendant was collaterally estopped from raising this point, in light of the decision of the federal district court to reject this argument in the Massachusetts case.
Thereafter, on February 3, 2010, the Court of Appeals for the First Circuit issued its opinion in plaintiff's appeal and reversed the district court's judgment. Evans Cabinet Corp. v. Kitchen Int'l, Inc., 593 F.3d 135 (1st Cir.2010). The court held that the district court erred by granting summary judgment because there were genuine issues of material fact as to whether the Quebec court had properly exercised personal jurisdiction over Evans. Id. at 147-48.
In its opinion, the court noted that the affidavits submitted by the parties on the jurisdictional issue were in conflict. Id. at 147. Defendant asserted that all of the contracts had been entered into in Georgia and defendant had not engaged in any business in Quebec. Ibid. Plaintiff had asserted that the parties had agreed to establish a showroom in Montreal. Id. at 138. Defendant denied, however, that there was any such agreement and also said that there was no connection between such a showroom and the allegedly defective products provided by plaintiff. Id. at 147.
The First Circuit found that the district court erred by resolving these fact issues against defendant, the non-moving party. Id. at 148. The court additionally found that the district court erred by granting summary judgment without considering the so-called "Gestalt factors" when determining *256 whether the Quebec court had properly exercised personal jurisdiction over defendant. Id. at 147. Those factors "`bear upon the fairness of subjecting a nonresident to the authority of a foreign tribunal.'" Id. at 146 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201 (1st Cir.1994)). The court remanded the matter to the district court for further proceedings. Id. at 148.

II.
On this appeal, defendant argues that the Law Division erred by refusing to strike the judgments or staying their enforcement pending a determination in the federal action as to whether the Quebec court properly exercised personal jurisdiction over it in plaintiff's Canadian lawsuits. Defendant maintains that the Law Division should have deferred to the federal courts in the Massachusetts case because that action preceded plaintiff's effort to domesticate and enforce the Canadian judgments in this state.
"New Jersey has long adhered to `the general rule that the court which first acquires jurisdiction has precedence in the absence of special equities.'" Sensient Colors, Inc. v. Allstate Ins. Co., 193 N.J. 373, 386, 939 A.2d 767 (2008) (quoting Yancoskie v. Del. River Port Auth., 78 N.J. 321, 324, 395 A.2d 192 (1978)). A New Jersey court may, however, "disregard" the deference traditionally "paid to the first-filed action" when "[s]pecial equities" are present. Id. at 387, 939 A.2d 767. "Special equities are reasons of a compelling nature that favor the retention of jurisdiction by the court in the later-filed action." Ibid.
Plaintiff contends that its Canadian lawsuit was the first-filed action in this dispute between the parties. Defendant maintains that the Canadian lawsuit is not entitled to status as the "first-filed" action because the "first-filed" rule provides that "`the court which first acquires jurisdiction has precedence in the absence of special equities.'" Sensient, supra, 193 N.J. at 386, 939 A.2d 767 (quoting Yancoskie, supra, 78 N.J. at 324, 395 A.2d 192). Defendant contends that the Quebec court did not acquire personal jurisdiction over it in plaintiff's Canadian lawsuits.
We are convinced that, under the unusual circumstances presented here, defendant's federal lawsuit in Massachusetts should be considered the "first-filed" action. We recognize that plaintiff's Canadian lawsuit was filed before that case. We also recognize that defendant chose not to appear, file an answer or contest the exercise of jurisdiction by the Canadian courts. Even so, as the First Circuit determined, there are genuine issues of material fact as to whether the Quebec court properly exercised personal jurisdiction over defendant in the Canadian lawsuit. Furthermore, defendant's federal action is the first lawsuit in which this jurisdictional issue has been raised and is being actively litigated.
We therefore conclude that, for purpose of resolution of the jurisdictional issue that is at the heart of plaintiff's effort to domesticate and enforce the Canadian judgments in New Jersey, defendant's federal lawsuit should be considered the "first-filed" action. We also conclude that plaintiff failed to establish "special equities" for the Law Division to decide whether the Quebec court properly exercised personal jurisdiction over defendant before that issue is resolved in the Massachusetts case.
As the Supreme Court explained in Sensient, our courts have found "special equities" to disregard the deference normally paid to the "first-filed" action in another state "when one party has engaged in jurisdiction *257 shopping to deny the other party the benefit of its natural forum." Id. at 387, 939 A.2d 767. "Special equities" also may be found when a matter involves "significant state interest" or when granting deference to the courts of another jurisdiction could contravene the forum state's public policy. Id. at 388-89, 939 A.2d 767. In addition, "special equities" may be found if it would cause a party "great hardship and inconvenience" to proceed with the "first-filed" action and no unfairness to the other party to proceed in the later-filed case. Id. at 389, 939 A.2d 767.
None of these "special equities" are present in this case. Defendant did not engage in forum shopping by bringing its lawsuit in the federal district court in Massachusetts. There is no reason to believe that, in determining whether the Quebec court properly exercised personal jurisdiction over defendant, the federal courts would treat defendant more favorably than the New Jersey courts. Furthermore, the question of whether the Quebec court properly exercised personal jurisdiction over defendant does not implicate any significant interest of this State, or contravene this State's public or judicial policy. Moreover, deferring to the federal courts in the Massachusetts case will cause no hardship or inconvenience to plaintiff, since plaintiff is already litigating the jurisdictional issue in that case. Thus, there are no "reasons of a compelling nature that favor" the resolution of the jurisdictional question by the Law Division in this case. Sensient, supra, 193 N.J. at 387, 939 A.2d 767.

III.
Although we conclude that the Law Division should have deferred to the federal action in Massachusetts for resolution of the issue of whether the Quebec court properly exercised personal jurisdiction over defendant, we are not convinced that the trial court erred by denying defendant's motion to strike the judgments. Nevertheless, we believe that the Law Division should have stayed enforcement of the Canadian judgments pending final resolution of the jurisdictional question by the federal courts in the Massachusetts case, upon the posting of adequate security by defendant.
The FCMJRA applies to "any foreign country money-judgment that is final and conclusive...." Enron (Thrace) Exploration & Prod. BV and ECT Europe Fin., Inc. v. Clapp, 378 N.J.Super. 8, 14, 874 A.2d 561 (App.Div.), certif. denied, 185 N.J. 392, 886 A.2d 662 (2005). A foreign country money-judgment is not conclusive if
(1) the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;
(2) the foreign country court did not have personal jurisdiction over the judgment debtor; or
(3) the foreign country court did not have jurisdiction over the subject matter.
[N.J.S.A. 2A:49A-20(a).]
In addition, "[a] foreign country money-judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit." N.J.S.A. 2A:49A-19. Therefore, a foreign country money-judgment may be enforced by the filing procedure established by the UEFJA, N.J.S.A. 2A:49A-27, or an action to enforce the judgment, as preserved by the UEFJA, N.J.S.A. 2A:49A-31. Enron (Thrace) Exploration, supra, 378 N.J.Super. at 15, 874 A.2d 561.
Here, plaintiff elected to enforce the Canadian judgments by employing the filing procedure in N.J.S.A. 2A:49A-27. However, *258 as we have explained, plaintiff may only do so if the judgment is a "conclusive" foreign county money judgment. N.J.S.A. 2A:49A-18. Because there are genuine issues of material fact as to whether plaintiff's Canadian judgments are "conclusive" and enforceable, and resolution of that issue must await the final determination on that question by the federal courts in the Massachusetts case, the Law Division should have stayed enforcement of the judgments pursuant to the UEFJA.
The UEFJA provides that:
[i]f the judgment debtor shows the Superior Court any ground upon which enforcement of a judgment of the Superior Court would be stayed, the Superior Court shall stay enforcement of the foreign judgment for an appropriate period, upon requiring the same security for satisfaction of the judgment which is required in this State.
[N.J.S.A. 2A:49A-29(b).]
To obtain a stay of execution pursuant to this statute, "a judgment debtor must strictly comply with the statute's provisions and post `security for satisfaction of the judgment' before a stay is issued." Maine v. SeKap, S.A., 392 N.J.Super. 227, 241, 920 A.2d 667 (App.Div.2007).
Therefore, we affirm the Law Division's order denying defendant's motion to strike the judgments but reverse the order to the extent that it permits immediate enforcement of the Canadian judgments. We remand the matter to the trial court for entry of an order staying enforcement of the judgments pending final resolution by the federal courts in the Massachusetts case of the question of whether the Quebec court properly exercised personal jurisdiction over defendant when it entered the disputed judgments, provided that defendant posts adequate security for the satisfaction of the judgments, in an amount determined by the trial court.
Affirmed in part, reversed in part, and remanded for further proceedings in conformity with this opinion.